**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-20983
Summary Calendar

ROBERTO ORTIZ,

Plaintiff-Appellant,

versus

THE SHAW GROUP, INC.; STONE & WEBSTER, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
Civil Action No. 4:05-cv-01671

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of Stone &

Webster, Inc., and Webster Services, L.L.C. (collectively "Stone & Webster") on Roberto Ortiz's

claims of intentional race discrimination. We affirm the district court's judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Stone & Webster provides engineering, procurement, and construction ("EPC") products and services. Oritz, an employee at Stone & Webster, worked as a process engineer. In this position, Ortiz dealt with clients in the petrochemical and refining industries. In 2000, Ortiz transferred into the technology group as a specialist. Shortly thereafter, Ortiz asked Don Bernard, the head of business development, for a transfer to the business development group. In 2001, Bernard granted Ortiz a transfer to work as a sales representative and later as a business development manager. Ortiz focused on providing clients products and services in the petrochemical and refinery business. The business development group also serviced power plants. Over time, Bernard assigned additional duties and customers to Ortiz's workload. As Ortiz gained more experience, Bernard increased his responsibilities to include developing business with refinery clients on the West and Gulf Coasts of the United States, PEMEX in Mexico, and PDVSA in Venezuala. Ortiz received positive work evaluations in this position.

In 2000, Stone & Webster's business declined with refining companies due to a downturn in the domestic process market. As a result of the adverse market, Stone & Webster decreased its Houston workforce from 500 employees to approximately 250 employees over a four-year period. In 2002, Stone & Webster's management instructed Bernard to lay off business development managers. During the initial reduction, Bernard released two Caucasian business development managers but kept Ortiz on the team.

In late 2003, Stone & Webster continued its organization. Abe Fatemizadeh, the Operations Manager, met with Randy Harrison, Bernard's direct supervisor, and Bernard to review staffing decisions for the process business development group. The managers determined that Stone & Webster needed to shift the focus of the process business development group from primarily selling

2

technology to primarily selling EPC services. Fatemizadeh suggested that Bernard lay off approximately half of his process business development managers, and Fatemizadeh and Harrison requested that Bernard recommend employees for termination.

Bernard's staff included business development managers working both in territories outside North and South America and in the United States and territories in the Americas. According to Stone & Webster, due to the specialized knowledge and experience of the managers working outside of the United States, Bernard only considered process business development managers assigned to the Americas for the impending lay off. These three managers were Ortiz and two Caucasian males, William Wallendorf and William Creighton. Stone & Webster contends that Bernard based his employment decision on which managers possessed the most beneficial skills and experiences for the company in light of market conditions and the company's plan to emphasize the sale of EPC services.

Bernard decided to keep Creighton and lay off Ortiz and Wallendorf. Creighton worked on business development for the petrochemicals market. Based on Bernard's assessment, even though the petrochemicals market suffered a decline, the prospect for growth seemed better than the refining market. Creighton also possessed more EPC sales experience than Ortiz and Wallendorf, and he was working on two major EPC projects for Chevron Phillips Chemical in the Middle East valued at $300 million and $1.2 billion at the time Bernard executed the lay off decision. In light of Creighton's current projects and experience, Bernard decided to retain him at the company. Bernard's superiors accepted his recommendation.

After terminating Ortiz, Stone & Webster did not hire a replacement. During the corporate reorganization, Stone & Webster laid off thirty-one employees–nine of the thirty-one employees worked in the Houston office and of the Houston employees, six were Caucasian, two were Hispanic,

3

and one was African American.

On May 9, 2005, Ortiz filed a lawsuit against Stone & Webster, claiming unlawful discrimination based on his race, color, and national origin. Stone & Webster moved for summary judgment. Stone & Webster argued that it articulated a legitimate, non-discriminatory reason for Ortiz's termination, a reduction-in-force prompted by declining market conditions, which suffices to preclude a finding of intentional discrimination. The district court granted Stone & Webster's motion and on November 15, 2006, entered final judgment as a matter of law. Ortiz timely appeals the district court's judgment.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Machinchick v. P.B. Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). In deciding a motion for summary judgment, the court must determine whether the submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hart v. Hariston*, 343 F.3d 762, 764 (5th Cir. 2003).

## III. DISCUSSION

To establish a prima facie case of intentional discrimination in a reduction-in-force case, a plaintiff must establish the following elements: (1) he is a member of a protected group; (2) he was adversely affected by the employer's decision; (3) he was qualified to assume another position at the time of discharge; and (4) there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in

4

similar positions. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991). If the plaintiff successfully establishes his prima facie case and creates a rebuttable presumption of discrimination, then the employer must assert a legitimate, nondiscriminatory reason for the employment action. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

Once an employer satisfies its burden, the presumption of discrimination falls aside, and the plaintiff must create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Rachid v. Jack In The Box, Inc.*, (376 F.3d 305, 312 (5th Cir. 2004). If the plaintiff shows that the illegal discrimination was a motivating factor, then the defendant may respond with evidence that the same employment decision would have occurred regardless of discriminatory animus. *Id.* at 312.

In this appeal, honing in on the prima face case, the parties contest whether Ortiz created a genuine issue of material fact on his allegations that Stone & Webster intentionally discriminated against him because of his race, color, and national origin. First, Ortiz argues that Creighton remained in a "similar position" after his termination, which demonstrates Stone & Webster's unlawful discrimination. Stone & Webster presented uncontroverted evidence to the district court, however, that the employees were not similarly situated with regards to their positions at Stone & Webster or work experience. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405-06 (5th Cir. 1999) (holding that similarly situated means employees with the same position, qualifications, and pay rate). Whereas Creighton held the position of a business development director, Ortiz worked

5

as a area sales manager, meaning that Creighton was employed in the most senior manager position and Ortiz in the lowest ranking manager position. Further, business development directors, such as Creighton, were primarily responsible for pursuing EPC opportunities, which aligned with Stone & Webster's business decision to pursue EPC service sales as opposed to refinary technology. Finally, Creighton's prior work experience included sales positions at two EPC companies, Fluor Daniel and Raytheon. Accordingly, Ortiz's argument that he and Creighton were similarly situated at the time of his termination fails based on the evidence in the record.

Second, Ortiz argues that Stone & Webster re-hired Wallendorf, the second manager laid off during the workforce reduction and a Caucasian male, proving that the only manager actually terminated during the reduction-of-force belonged to a protected class. The undisputed evidence demonstrates, however, that Stone & Webster did not re-hire Wallendorf into the same position of a business development manager. On January 9, 2004, Stone & Webster terminated Wallendorf and Ortiz. Following their termination, Wallendorf worked on a temporary basis pursuant to a consulting contract with the technology group. Ortiz asserts "Wallendorf has enjoyed continuous employment with Stone & Webster and has earned a continuous income as well." Even assuming the truth of this statement, based on this evidence alone, Ortiz cannot sustain his claim of discrimination. Wallendorf no longer works as a full-time permanent employee in the business development department; instead, he works on a contractual basis with the technology group. Therefore, Wallendorf's current employment arrangement with Stone & Webster fails to establish that the company treated Ortiz differently than a non-member of the protected class in laying him off during the reduction-in-force.

In summary, Ortiz presented no evidence to the district court in support of the final prong of

6

his prima facie case. As his central strategy, Ortiz attempted to show that his two co-workers in the business development group were similarly situated to himself and remained in the same position. For the reasons stated above, however, Stone & Webster's employment decisions regarding Creighton and Bernard do not satisfy Ortiz's burden of establishing a prima facie case of race discrimination. Thus, the district court properly granted Stone & Webster's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.