# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60401

United States Court of Appeals
Fifth Circuit

**FILED**
July 18, 2019

Lyle W. Cayce
Clerk

LAMON K. GRIGGS,

Plaintiff - Appellee

v.

CHICKASAW COUNTY, MISSISSIPPI,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Lamon Griggs served as Chickasaw County's Solid Waste Enforcement Officer for fifteen years before the County's Board of Supervisors unanimously eliminated his position in 2015. After his position was eliminated, Griggs brought a First Amendment retaliation claim under 42 U.S.C. § 1983 against Chickasaw County. Griggs alleged that his position was eliminated because he was running for sheriff as an Independent and against the Board's preferred candidate, a Democrat. The matter went to trial, and a jury found for Griggs.

The County now appeals. We AFFIRM.

No. 18-60401

## BACKGROUND

Griggs worked as Chickasaw County's Solid Waste Enforcement Officer for fifteen years without receiving any complaints about his job performance. His duties related to illegal dumping of waste, including "investigations, searches," "identify[ing] the violator," ensuring proper cleanup, and "going to court." Griggs applied for grants each year to fund his work, and grants from the Mississippi Department of Environmental Quality ("MDEQ") supported at least half of Griggs' salary.

In 2015, Griggs decided to run for Sheriff of Chickasaw County as an Independent. In July 2015, Griggs spoke with Anderson McFarland, a member of Chickasaw's five-member Board of Supervisors, about his campaign. Supervisor McFarland asked if Griggs was "going to pull out" of the sheriff race. Griggs answered no. Supervisor McFarland responded that Supervisor Jerry Hall and "them" wanted Griggs to withdraw from the race.

In 2015, the County's Chancery Clerk notified the Board that the solid waste fund was in the red and that the County had not received funding from a grant that Griggs should have submitted in 2014. In August 2015, the Chancery Clerk shared with Griggs that the County had not received the usual grant money. While MDEQ did not have a grant application on file from the County, Griggs claimed to have submitted the grant application and did not know why MDEQ did not have it.

On September 22, 2015, the Chancery Clerk asked Griggs to attend the Board meeting to explain to the Board what happened to the grant. At the meeting, Supervisor Hall asked the Chancery Clerk whether the County had received its grant money, and the clerk replied no. Supervisor Hall then responded, "I say we go ahead and just eliminate this program right now." The clerk advised the Board that the County had another grant and suggested that the County use that grant to fund Griggs' position through the start of the year.

2

No. 18-60401

However, Supervisor Russell Brooks rejected the suggestion because the County did not have the "money in hand." Supervisor Hall then chimed in and also rejected the suggestion.

The Board unanimously voted to eliminate Griggs' position of Solid Waste Enforcement Officer, and the position was reported as being eliminated "due to lack of funds." Following the elimination of Griggs' position, the Board moved Griggs into a Bailiff position. .

At that same meeting, Supervisor Brooks asked Griggs if he knew "what the Hatch Act is."[1]

About a week later, Griggs again spoke with Supervisor McFarland at a restaurant. Supervisor McFarland told Griggs that his termination "looked like political favoritism and that [the Board] was going to go back and revisit" the issue. Griggs had "high hopes that [the Board] would do that, but [he] never heard another thing" about it. The Board did not reconsider its decision.

Griggs did not appeal the Board's decision to the County's circuit court. Also, he applied to the Mississippi Employment Security Commission ("MESC") for unemployment benefits. In Griggs' unemployment application, he responded that he was "laid off."

Subsequently, Griggs sued the County and alleged that the County eliminated the Solid Waste Enforcement Officer position because of constitutionally protected political activity (i.e., running for sheriff). The County moved for summary judgment, which the district court denied. The case proceeded to trial.

---

[1] The Hatch Act prohibited federal employees from taking an active role in political campaigns and applied, until recently, to state and local employees whose positions were federally funded. *Phillips v. City of Dall.*, 781 F.3d 772, 776 & n.4 (5th Cir. 2015).

No. 18-60401

At trial, there was evidence that:

1. During a casual conversation about politics at a McDonald's, **Supervisor McFarland** told Griggs that **Supervisor Hall** and others wanted Griggs to drop out of the race.

2. During the termination meeting, **Supervisor Brooks** asked Griggs whether he knew "what the Hatch Act is."

3. After Griggs' position was eliminated, **Supervisor McFarland** said it "looked like political favoritism."

4. **Supervisor Hall** and **Supervisor Brooks**, "who had indicated a desire to have Griggs out of the race for sheriff," were most active during the termination hearing.

At the end of Griggs' case-in-chief, the County moved for judgment as a matter of law. The motion was denied.  The trial proceeded, and the jury ultimately returned a verdict in Griggs' favor.  The jury found that Griggs had "prove[n] by a preponderance of the evidence that his running for Sheriff was a motivating factor in his losing his position as Solid Waste Enforcement Officer."  The jury also found that the County had failed to prove "by a preponderance of the evidence that it would have eliminated the position . . . regardless of whether or not [Griggs] ran for Sheriff."

After trial, the County renewed its motion for judgment as a matter of law and for a new trial, which the district court denied.

The County now appeals the district court's denial of its motions for summary judgment, for judgment as a matter of law, and for a new trial.

## STANDARD OF REVIEW

"We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court." *Encompass Office Sols., Inc. v. Louisiana Health Serv. & Indem. Co.*, 919 F.3d 266, 273 (5th Cir. 2019) (quotation omitted).  "The jury's verdict can only be

4

overturned if there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (quotation omitted). "As a consequence, [this court] 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 358 (5th Cir. 2017) (per curiam) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)). The court may only credit "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (quotation omitted). "The jury's verdict should be affirmed unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Alonso v. Westcoast Corp.*, 920 F.3d 878, 882 (5th Cir. 2019) (quotation omitted).

"We review the district court's grant or denial of a new trial for abuse of discretion." *Encompass Office Sols., Inc*, 919 F.3d at 273 (quotation omitted).

## DISCUSSION

The County argues that Griggs' claim is not permitted as it was: (1) barred by the *Rooker-Feldman* doctrine; (2) judicially estopped because Griggs selected that he was "laid off" in his application for unemployment benefits; and (3) precluded because Griggs failed to appeal the Board's decision under Miss. Code. Ann. § 11-51-75. The County further argues that Griggs' position was a policymaking position that insulates it from First Amendment liability, and there was insufficient evidence at trial that a majority of the Board was motivated by Griggs' run for sheriff in eliminating his position.

We find no reversible error.

## I.     Griggs' Claim Is Permitted.

### A.     The *Rooker-Feldman* doctrine is inapplicable.

The County argues that Griggs' claim is barred by the *Rooker-Feldman* doctrine and that the district court, therefore, lacked subject-matter jurisdiction over the claim.  According to the County, the Board's decision was a state judgment, and the *Rooker-Feldman* doctrine forecloses Griggs' claim.

"Because the *Rooker–Feldman* doctrine is jurisdictional, we must address this issue first."  *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381–82 (5th Cir. 2013). The doctrine "directs that federal district courts lack jurisdiction to entertain collateral attacks on *state court judgments*."  *Kam v. Dall. Cty.*, 756 F. App'x 455, 455 (5th Cir. 2019) (per curiam) (quotation omitted) (emphasis added); *see also Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 257 (3d Cir. 2003) ("The Supreme Court has made clear, however, that the *Rooker-Feldman* doctrine only applies to state judicial proceedings, not administrative or legislative proceedings.").

Here, Griggs challenges the decision of the Board, not the decision of a state court.  Accordingly, the *Rooker-Feldman* does not apply, and the district court did not lack jurisdiction over Griggs' First Amendment claim.

### B.     Griggs' claim is not judicially estopped based on his response in his unemployment application.

The County argues that Griggs is judicially estopped from claiming that his position was eliminated in violation of his First Amendment rights because he selected that he was "laid off" on his unemployment benefits application.

Judicial estoppel is appropriate when: "(1) a party has asserted a position that is plainly inconsistent with a previously asserted position, (2) the earlier position was accepted by the court, and (3) the party did not act inadvertently." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 927 (5th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (Feb. 1, 2019).

No. 18-60401

At a minimum, the County has failed to demonstrate that Griggs' claim that he was terminated in violation of his First Amendment right is "plainly inconsistent" from his assertion in his unemployment application that he was "laid off." Griggs' assertion in his application to the MESC simply reiterates the reason the County provided for his termination: "lack of funds." As the district court noted, "MESC did not inquire into whether [Griggs] engaged in protected speech," it only inquired as to whether he was entitled to unemployment benefits. The County's argument fails.

## C. Griggs' failure to appeal the Board's decision in state court does not preclude his First Amendment claim under § 1983.

The County argues that Griggs is precluded from bringing his claim because he failed to appeal the Board's decision to the County's circuit court under Miss. Code § 11-51-75.[2] However, this court has already held that a plaintiff's failure to use § 11-51-75 does not prevent a federal court from hearing a federal claim brought under § 1983. *See Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 496 n.10 (5th Cir. 2004) (quotation omitted) ("When federal claims are premised on 42 U.S.C. § 1983 . . . we have not required exhaustion of state judicial or administrative remedies."). The County's argument fails.

## II. Griggs' Position Was Not A Policymaking Position.

"It is well settled that the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate . . . ." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 421 (5th Cir. 2017) (quotation omitted). "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must

---

[2] Under § 11-51-75, a person aggrieved by a decision of the county's board of supervisors may appeal the decision to the county's circuit court within ten days of the decision.

show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Id.* at 420–21 (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).  Only the third prong is at issue in this matter: the balance between the government's interests and Griggs' interests.

This "case-by-case balancing test" compares "an employee's interest in commenting upon matters of public concern" and "the interest of the State in promoting the efficient delivery of public services." *Wiggins v. Lowndes Cty., Miss.*, 363 F.3d 387, 390 (5th Cir. 2004).  "[The] key factor in the balancing test is whether political allegiance is an appropriate requirement for the effective performance of the public office involved." *Id.* (quotation omitted).  This court "more readily find[s] that the government's interests outweigh the employee's interests where the employee is a policymaker" for purposes of the First Amendment. *Id.*

"A policymaker is an employee whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Id.*  "[C]onsideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* (quotation omitted).

Referencing a grant application signed by Griggs, the County argues that Griggs' position, Solid Waste Enforcement Officer, was a policymaking role because:

> 1. Griggs "traveled and monitored 571 miles of county roads looking for illegal dumping";

8

No. 18-60401

2. Griggs "determined who to ticket for these dumping activities";

3. Griggs "receive[d] calls from citizens who ma[d]e complaints which he investigate[d]";

4. Griggs worked "8-10 hours per day" and was "on-call 7 days a week and 24 hours a day"; and,

5. He "was solely responsible for applying for the grant to fund his program and salary and thus, he set the budget for the program."

Even considering these assertions, the County fails to demonstrate that Griggs occupied a policymaking role. There is no evidence that Griggs created or implemented policy or that he had discretion in performing his duties that was not severely limited by a supervisor. As the district court noted, Griggs was required to report to the road manager, and besides applying for grants, he was not involved in the funding process. The County's argument that Griggs occupied a policymaking position fails.

## III.   The Jury's Verdict Was Supported By Sufficient Evidence.

The County argues that Griggs failed to prove that a majority of the Board eliminated his position because he ran for sheriff.[3]

Again, the jury's verdict can only be overturned "if there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Miller*, 716 F.3d at 144.

A municipality faces liability under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v.*

---

[3] Griggs argues that the County forfeited the argument by raising it for the first time on appeal. Although the County could have raised its argument more clearly, the argument was "sufficient to permit the district court to rule on the essential argument [the County] advances on appeal." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 427 n.29 (5th Cir. 2002).

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (rejecting *respondeat superior* liability). Thus, "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). When the municipality's policymaker is a multimember board, "the separate actions of individual members of the Board are not sufficient to bind the Board as an entity." *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 521 (5th Cir. 1998).

The County does not dispute that the Board was a policymaker, or that eliminating Griggs' position was an official policy. Here, the only issue is whether the "moving force" behind eliminating Griggs' position was Griggs' run for sheriff. *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018) (explaining a retaliation claim against a municipality requires the plaintiff to "prove the existence and enforcement of an official policy motivated by retaliation").

While there was evidence of retaliatory animus by individual board members, "the dispositive question is simply whether retaliatory animus is also chargeable to the Board itself." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). Where the evidence relates to individual members of a board, other circuits require proof that a majority of the multimember body had the requisite motive ("the majority-motivation approach") to impute the retaliatory animus to the board. *See, e.g., Campbell v. Rainbow City, Ala.*, 434 F.3d 1306 (11th Cir. 2006); *LaVerdure v. Cty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994).

We agree that Griggs was required to show that a majority of the Board had retaliatory animus. Even so, there is a legally sufficient basis for the jury's verdict. Drawing all reasonable inferences in Griggs' favor, which we must do,

there is evidence that at least three of the five board members had retaliatory motive. This evidence is legally sufficient to support the jury's verdict.

## CONCLUSION

For the foregoing reasons, we AFFIRM the jury's verdict.