# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30813
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2014

Lyle W. Cayce
Clerk

MARILYN R. LEWIS

Plaintiff-Appellant

v.

JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2, PARISH OF
JEFFERSON, doing business as East Jefferson General Hospital

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-944

Before DAVIS, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Marilyn Lewis filed suit against Defendant-Appellee
East Jefferson General Hospital ("EJGH"), alleging that EJGH terminated her
employment because of her race, in violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000, *et seq.*, and the Louisiana Employment

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-30813

Discrimination Law, La. R.S. § 23:301, *et seq.* The district court granted summary judgment in favor of EJGH. Lewis timely appealed.

Lewis is an African-American female. Lewis and Vanessa Bergeron, also an African-American female, initially worked with Dr. James McKinnie at Tulane Medical Center. When Dr. McKinnie left Tulane to open a physician's office at EJGH, he requested that EJGH hire Lewis and Bergeron along with him. When EJGH hired Lewis and Bergeron—both for the position of Patient Access Representative II—they, like all new employees, were subject to a 90-day probationary period.[1] Muffett Mayet, a Caucasian female, worked as Registered Nurse in the same office. Karen Copeland, a Caucasian female, was the office manager and direct supervisor of Lewis, Bergeron, and Mayet.

One of the requirements for the position of Patient Access Representative II is that the candidate be a high school graduate. It is undisputed that Lewis does not have a high school degree. EJGH presented evidence that it would have been against EJGH policy to hire Lewis had it known that she did not have a high school diploma or GED.

Copeland testified that Lewis did not accurately perform checkout procedures, balance charges and payments, handle patient-account inquiries, or obtain authorization for patients' insurance and benefits. Copeland further testified that she did not feel that Lewis respected her because Lewis would discuss her questions with Dr. McKinnie rather than with Copeland, who was her manager in the chain of command. Throughout the probationary period, Copeland maintained documentation of many conversations she had with Lewis, during which she explained Lewis's repeated performance deficiencies. At the end of the probationary period, Copeland submitted an evaluation of

---

[1] Bergeron also was terminated after the probationary period and also filed suit against EJGH. The district court denied Lewis and Bergeron's collective motion to consolidate the two cases.

No. 13-30813

Lewis in which she noted that Lewis had not met EJGH standards in nine out of sixteen criteria and recommended that EJGH not extend permanent employment. After Copeland submitted the evaluation to Human Resources, that department further investigated the recommendation—by examining Copeland's documentation of performance deficiencies and by interviewing other employees—before making a decision about whether to terminate Lewis.

Lewis has presented only circumstantial evidence of racial discrimination. Thus, we apply a modified version of the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to evaluate her claim. "To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[2] *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If the employee establishes a prima facie case, "an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action." *Id.* If the

---

[2] The parties cite to different formulations of the fourth element of the prima facie case. Lewis contends that the fourth requirement is that the plaintiff was replaced by someone outside the protected class. *See Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001); *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999). The specific prima facie proof required will vary with the facts of each case. *McDonnell Douglas*, 411 U.S. at 802 n.13. As the district court noted, Lewis's claim falls somewhere between discriminatory termination and discriminatory hiring because she was subject to the probationary period. Both Lewis and Bergeron were replaced by Caucasian employees. However, we need not decide which specific formulation of the prima facie case applies here because both require the plaintiff to show that she was qualified for the position, which Lewis has failed to do.

3

employer provides such an explanation, "the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias." *Id.*

EJGH argues that Lewis cannot establish a prima facie case because she did not have a high school degree as required for the position, a fact of which EJGH was not aware when it hired her. Therefore, EJGH argues, Lewis cannot demonstrate that she was qualified for the position. Lewis does not contend that she does in fact have a high school degree. Instead, she argues that "[t]here is no evidence that had EJGH known Ms. Lewis lacked a high school diploma, it would have terminated her because she did not 'meet the qualifications' of the job position. . . . Even without a high school diploma, Ms. Lewis had the capacity to do the Patient Access Representative II job."

Lewis has not established a prima facie case because she has not shown that she was qualified for the position of Patient Access Representative II. First, Lewis does not have a high school degree, which is an undisputed objective qualification for the position. *See Williams v. Dallas Cnty. Cmty. College Dist.*, No. 96-10477, 105 F.3d 657, at * 1-2 (5th Cir. 1997) (unpublished) (affirming summary judgment on discriminatory-termination claim where employee failed to establish that she was qualified because she did not have a college degree as required by the position); *Merwine v. Board of Trustees for State Insts. of Higher Learning*, 754 F.2d 631, 637 (5th Cir. 1985) (affirming judgment notwithstanding the verdict on discriminatory-hiring claim where employee failed to establish that she was qualified because any evidence of her qualifications "fail[ed] to contradict or diminish in any way the simple,

4

uncontested and stipulated fact that [she] did not possess the published minimum educational requirement").[3]

Second, in order for Lewis to obtain permanent employment, she had to successfully complete the probationary period, which EJGH determined she did not do. *See Carr v. Murphy Oil USA, Inc.*, 269 F. App'x 378, 378-79 (5th Cir. 2008) (unpublished) (affirming summary judgment on race-discrimination claim where plaintiff failed to establish that he was qualified because he did not show sufficient progress during on-the-job training period, and multiple supervisors thought he had trouble grasping knowledge necessary to perform the position). Lewis has not shown that she successfully completed the probationary period. Contrary to Lewis's contentions, Dr. McKinnie testified that he had known Lewis to be an excellent employee at Tulane but admitted that he did not have occasion to witness Lewis's day-to-day performance at EJGH, that Copeland had expressed dissatisfaction with Lewis's performance early on, and that Copeland's documentation of Lewis's performance "paints the picture of someone who's incompetent to do the job." Other employees testified that they observed deficiencies in Lewis's performance. Lewis's own conclusory allegations as to adequate performance are insufficient to raise a fact issue. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010); *Patrick v. Principi*, No. 01-50319, 275 F.3d 44, at *3 (5th Cir. 2001)

---

[3] As the district court reasoned, Lewis's reliance on *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988), is misplaced. In that age-discrimination case, the plaintiff was qualified when hired, and we explained that "a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he *continued to possess* the necessary qualifications for his job at the time of the adverse action. By this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Id.* at 1506 & n.3 (emphasis added). We rejected the proposition that "the fact that a plaintiff was hired initially indicates that he had the basic qualifications." *Id.* at 1505-06 (internal quotation marks and citation omitted).

(unpublished); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1999); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988).

Even assuming Lewis had established a prima facie case, she has not produced "substantial evidence" to show that EJGH's alleged nondiscriminatory reason for termination is pretextual. *See Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001). As evidence of pretext, Lewis argues that Dr. McKinnie was completely satisfied with Lewis's performance and that Mayet was a similarly situated white employee who received more favorable treatment in that she also had performance problems but was not terminated.

"Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient. This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief." *Auguster*, 249 F.3d at 403 (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999)). As noted above, Dr. McKinnie's testimony does not establish that Lewis met EJGH standards during the probationary period. Furthermore, Mayet is not an adequate comparator because she held a different position with different responsibilities, and the conduct that allegedly drew dissimilar employment decisions was different. *See Lee*, 574 F.3d at 259-60. Mayet was a registered nurse who had patient responsibilities, whereas Lewis handled day-to-day clerical work. Lewis cited Mayet's inability to perform an EKG as proof that Mayet's performance was deficient, whereas Lewis did not perform EKGs. Similarly, Lewis acknowledged that she "wouldn't say [she was] asked to do [Mayet's] work." Lewis has not shown that EJGH's reason for terminating her was merely pretext for discrimination.

We AFFIRM the district court's judgment.