# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60117

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2019

Lyle W. Cayce
Clerk

MARY PAULA HARVILLE,

> Plaintiff - Appellant

v.

CITY OF HOUSTON, MISSISSIPPI,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge.

Mary Paula Harville appeals the district court's grant of summary judgment on her race discrimination and retaliation claims under Title VII and 42 U.S.C. § 1981. Harville was terminated from her position as deputy clerk with the City of Houston, Mississippi in 2015 as part of a group of layoffs designed to offset the City's budget shortfall. Because Harville fails to present a genuine issue of material fact that her race was a motivating factor in her termination or that there was a causal connection between her EEOC complaint and that termination, we affirm.

I.

Harville, a white female, was hired as a deputy clerk by the City of Houston in 2005. She worked in that position for approximately ten years. In September 2015, the City was facing a budget shortfall and the Board of Aldermen voted unanimously to eliminate the positions and salaries of four City employees, including Harville's position. Harville's claims against the City arise from that termination.

At the time of her termination, there were four deputy clerks in the clerk's office. The deputy clerks were cross-trained, but each maintained primary duties. Harville's primary duties included processing and invoicing ad valorem, school, and privilege taxes. During her employment as a deputy clerk, Harville enjoyed positive reviews from her superiors.[1] With respect to the other deputies' duties, Barbara Buggs—who was hired before Harville—was responsible for payroll and insurance, tax receipting, voter registration, and human resource tasks. Kathy Smith was also hired before Harville and her primary duties included serving as the Municipal Court Clerk. Shequala Jones was the only deputy clerk hired after Harville, in 2007, and she was primarily responsible for collecting water and sewage fees. Smith is also white while Buggs and Jones are black. Two of the deputy clerks are related to Alderwoman Sheina Jones; Buggs is her sister and Jones is her first cousin.

In the fall of 2015, facing a budget shortfall, the City's Board began working on a budget for the next fiscal year. Harville was aware of the financial problems and the City Clerk at the time, Margaret Futral, told Harville in

---

[1] The City Clerk at the time of Harville's termination, Margaret Futral, described Harville as an excellent employee. Futral also contrasted Harville with the three other deputy clerks, whom she described as spending a lot of time on their phones or social media. Retired City Clerk Bobby Sanderson stated that he had never had problems with Harville and that she was an "excellent" employee. Former City Clerk Janie Dendy also described her as a good employee and stated that she was surprised that Harville had been let go.

August or September that the Board was considering reducing the number of deputy clerks from four to three. In preparation for the September 15, 2015 board meeting, Futral created a document explaining the steps that had been taken to manage the budget, advocating that the Board keep Harville's job, and proposing a solution of cutting each deputy clerk's hours by five. Futral believed Harville's tax duties were "crucial" and no other deputy clerk could perform those tasks. In contrast, Futral noted that Jones had been out for maternity leave for six weeks and the other deputy clerks had adequately covered her job responsibilities. Futral stated that she would resign if the Board chose to terminate Harville, explaining that she would be unable to perform the duties of City Clerk with the added responsibility of Harville's duties.

At the September 15 meeting, the Board entered into an executive session to consider the layoffs. Echoing Futral, Mayor Stacy Parker also suggested that instead of eliminating the positions of four city employees, the Board consider other potential budget savings like cuts to hours and insurance. Alderman Uhiren stated that he considered Harville's job seasonal because it was related to tax collection—Futral disputed that it was seasonal, and again advocated for cutting hours to generate the same cost savings. Futral also suggested that it would make more sense to cut Jones's job, because the other deputies had covered her responsibilities during her maternity leave—Futral did not know how to perform Harville's job. Alderwoman Jones responded that Buggs (her sister) had trained Harville and knew the job.[2] In a final attempt to save Harville's position, Futral asked if all four deputies could remain employed if she resigned (meaning one deputy would be promoted to City

---

[2] It later became apparent that Buggs did not know how to do Harville's job. In her deposition, Futral stated that after Harville's departure, approximately 80 percent of the work fell to Futral and Buggs was unable to assist.

Clerk). The Board determined that if Futral resigned the City would post the clerk's job rather than promoting from within. The Board ultimately rejected all of the proposed solutions that would preserve Harville's job and voted unanimously to eliminate four full-time positions, including Harville's.[3] Immediately after the meeting concluded, Harville spoke to Mayor Parker and Futral. According to Harville, Parker told her she was terminated because the Board had determined that her job was seasonal. The Board has not posted or filled Harville's position since her departure. Harville filed a charge of discrimination with the Equal Employment Opportunity Commission on November 3, 2015—alleging she was discriminated against on the basis of her race and age—and, upon her request, was given notice of her right to sue in February 2016.

Futral resigned in March 2016, approximately six months after Harville's termination. The Board accepted her resignation and voted to advertise the position of City Clerk. The advertisements ran in the local newspaper, the *Chickasaw Journal*, starting in March 2016. Harville submitted an application each time the position was listed. Although the City accepted applications between March and November 2016, it chose not to interview any candidates for the position because of the cost-savings of the City Clerk's salary. During the Board's July 2016 meeting, the Board discussed the possibility of contracting an accountant part-time to prepare the City's budget rather than hiring a full-time clerk. The August 2016 advertisement was revised accordingly to include preferred qualifications of being a CPA or having a four-year degree in accounting and to reflect that the position was either

---

[3] The other positions eliminated were public works supervisor, code enforcement officer, and park employee.

part-time or full-time.[4] The Mayor successfully prepared the 2017 budget while the clerk position was vacant, but because the task was time-consuming for the Mayor, the Board voted to advertise the position again. After applying for the posted position in March and May and not receiving an interview, Harville filed a second EEOC charge of discrimination on August 1, 2016, alleging that the City had refused to interview her in retaliation for her earlier EEOC charge and her filing of the complaint in this case.

After the position was posted a final time in September, the Board reviewed between fifteen and twenty applications and chose to interview two candidates: Harville and Lisa Sanford. Sanford held a Bachelor of Science in Accounting from Mississippi University for Women and had over thirty years of accounting experience.[5] The Board asked the same questions of both candidates. After the interviews, the Board voted unanimously to hire Sanford on November 15, 2016. On November 29, 2016, Harville filed a supplemental EEOC charge, informing the EEOC of the advertisement with revised qualifications, her interview, and Sanford's hiring. At her request, she received a second notice of her right to sue in February 2017.

Harville filed this suit in the Northern District of Mississippi in April 2016 alleging racial discrimination under Title VII and 42 U.S.C. § 1981 and age discrimination under the ADEA. Harville amended her complaint in February 2017 to add her claim for retaliation under Title VII, based on the City's decision not to hire her for the clerk position. The district court granted summary judgment on all claims on January 30, 2018. This appeal followed.[6]

---

[4] The lack of a degree would not however preclude an otherwise qualified candidate from being considered.

[5] Sanford was also previously employed as the Accountant and Public Utilities Office Manager for the City of Carthage.

[6] Harville appeals the district court's decision as to her race discrimination and retaliation claims, not the age discrimination claim.

II.

We review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party.[7] Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "A fact is material if it 'might affect the outcome of the suit' [and a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[9]

III.

Harville's Title VII claim relies on circumstantial evidence and is therefore subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*.[10] Under that framework, Harville has the initial burden to establish a prima facie case of discrimination—she must produce evidence that she (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class.[11] The prima facie case, once established, creates a presumption of discrimination and the burden then shifts to the City to articulate a

---

[7] *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 425–26 (5th Cir. 2017) (citing *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016)).

[8] Fed. R. Civ. P. 56(a).

[9] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[10] 411 U.S. 792 (1973). Although Harville brings her claims under Title VII and Section 1981, "we refer only to Title VII, because 'when used as parallel causes of action, Title VII and Section 1981 require the same proof to establish liability,' and 'it would be redundant to refer to both of them.'" *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 2016 n.3 (5th Cir. 2016) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (internal alterations omitted)).

[11] *Alkhawaldeh*, 851 F.3d at 426.

legitimate, non-discriminatory reason for the adverse employment action.[12] If the City is able to articulate a legitimate, non-discriminatory reason for the termination, the burden shifts back to Harville to "demonstrate that the employer's proffered reason is a pretext for discrimination."[13]

The district court held that Harville had made out a prima facie case for race discrimination. In its brief, the City urges us not to accept that finding on appeal, suggesting that Harville fails to make out the fourth element of her prima facie case because Harville was not replaced and she is unable to show that a similarly-situated employee was treated more favorably. It is undisputed that Harville was not replaced, and the City contends she failed to show that a similarly-situated employee was treated more favorably. Principally, the City argues Shequala Jones is not a proper comparator because Jones and Harville had different levels of education and job responsibilities.

The City interprets that fourth prong with too much granularity. To establish the fourth prong of her prima facie case here, Harville must demonstrate she was treated less favorably because of race than were other similarly situated employees who were not members of that protected class.[14] We have emphasized that "nearly identical" is not synonymous with "identical."[15] "The employment actions being compared will be deemed to have

---

[12] *Shackelford*, 190 F.3d at 404.

[13] *Alkhawaldeh*, 851 F.3d at 426 (quoting *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (internal quotation marks omitted)).

[14] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). In her reply brief, Harville suggests that the similarly-situated standard applies only where the employee was fired for misconduct and the court must consider whether the misconduct was nearly identical. But that test also applies in reduction-in-force cases and is framed as whether other employees, who were not members of the protected class, *remained* in similar positions. *See e.g.*, *Ortiz v. Shaw Grp., Inc.*, 250 F. App'x 603, 606 (5th Cir. 2007) (per curiam). In other words, the question is whether similarly situated employees who were not members of the protected class avoided the layoffs.

[15] *Lee*, 574 F.3d at 260 ("Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity

been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[16] Here, Harville and Jones held the same position—both were deputy clerks. And while each deputy clerk had specialization in certain tasks in the office, the four employees were cross-trained, evidenced by the lists of job duties and the fact that three deputy clerks were able to cover Jones's duties adequately while she was on maternity leave. Further, all four deputy clerks had the same supervisor. The district court was correct in concluding that Harville has made out the fourth prong of her prima facie case—she has produced sufficient evidence that would permit a reasonable fact-finder to conclude that she and Jones are similarly-situated.[17] Based on their shared characteristics, a reasonable jury could conclude that the City engaged in disparate treatment.

Having established her prima facie case, the burden shifts to the City to articulate a legitimate non-discriminatory reason for the adverse employment action. Here, the City met this burden by offering sufficient evidence of its non-discriminatory reason for terminating Harville: the City was facing a budget shortfall and chose to implement a reduction in force. The City chose Harville's position—rather than one of the other three deputy clerks—because it believed her primary duties (taxes) were seasonal. The burden then shifts back to Harville to demonstrate that the City's proffered reason was a pretext for discrimination.

---

rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical.").

[16] *Id.*

[17] *Morris v. Town of Independence*, 827 F.3d 396, 402 (5th Cir. 2016).

The district court held that Harville failed to present evidence that the City's non-discriminatory reason for her termination was merely a pretext and therefore did not meet her burden under the *McDonnell-Douglas* framework. On appeal, Harville argues that the district court misapplied the Supreme Court's precedent in *Reeves v. Sanderson Plumbing Products, Inc.*[18] Harville faults the district court for failing to draw all reasonable inferences from the evidence she presented, primarily the testimony of the former city clerk, Futral. She urges that she presented adequate evidence that the City's non-discriminatory explanation was pretextual because Futral testified that Harville's job was not seasonal and would be the hardest job to replace because she did not know how to complete Harville's tax duties. Harville also takes issue with the district court's conclusion that Harville conflated discrimination with nepotism. She asserts that it is the province of the jury to make such an inference and suggests that even if it was legitimate to infer the decision was motivated by nepotism, making kinship to a black alderperson a job qualification itself discriminates on the basis of race. Principally, Harville suggests that the district court's conclusions were in fact jury questions.

In *Reeves*, the Supreme Court considered an employee's age discrimination claim and clarified how a plaintiff may establish that an employer's nondiscriminatory explanation is pretextual.[19] The Court held that a plaintiff's prima facie case of discrimination, taken with sufficient evidence from which a reasonable factfinder could reject the employer's nondiscriminatory explanation for its decision, can be adequate to sustain a finding of liability for intentional discrimination.[20] The Court warned, however, that such a showing will not *always* be adequate to sustain a liability

---

[18] 530 U.S. 133 (2000).

[19] *Id.* at 137.

[20] *Id.* at 148.

finding.[21] For example, "no rational factfinder could conclude that the action was discriminatory . . . if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred."[22]

Harville argues that the district court failed to follow *Reeves* by failing to credit her evidence from which a reasonable jury could infer that the seasonality explanation was pretextual—namely, that Futral maintained that the job was not seasonal, she had positive reviews from Futral, and that Alderwoman Jones suggested that another deputy clerk (her sister) could adequately cover Harville's duties, which turned out to be untrue.

But Harville does not create a genuine issue of material fact. She does not challenge the City's explanation that it had to fire *a* deputy clerk because of the budget shortfall, instead questioning only the Board's decision that *her* position was best of the four to eliminate because it was seasonal. Although Harville presents evidence that Futral told the Board that she did not agree that Harville's job was seasonal, in her deposition, Futral testified that the actual decisionmakers—the members of the board—believed that the job was seasonal.[23] The issue at the pretext stage is not whether the Board's reason was actually correct or fair, but whether the decisionmakers honestly believed the reason.[24] Harville has not provided sufficient evidence from which a jury

---

[21] *Id.*

[22] *Id.*

[23] "Q: I mean, did they believe that her job was seasonal? A: You know, I don't know. I guess they did. They said it."

[24] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.").

could infer that the City's decision here was not a simple reduction-in-force decision based on objective criteria.[25] Considering the record—including the Board notes and Futral's testimony—in the light most favorable to Harville, no reasonable finder of fact would conclude that the board's explanation was a pretext for racial discrimination. *Reeves* does not relieve a plaintiff of her burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[26]

The district court also concluded that while Harville may have produced sufficient evidence to suggest that the City was motivated by nepotism, that was not evidence of racial discrimination and Harville improperly conflated the two concepts.[27] On appeal, Harville suggests that any nepotism was itself racial discrimination, because it "mak[es] kinship to a black alderperson a job qualification." We agree with the district court that Harville fails to demonstrate how a decision based on family preferences intentionally discriminated on the basis of race. "Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment

---

[25] *Robertson v. Alltel Info. Servs.*, 373 F.3d 647, 652–53 (5th Cir. 2004).

[26] *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal quotation marks and alterations omitted). The district court did misstate the plaintiff's burden when discussing the seasonality explanation and cited to a pre-*Reeves* case, *Little v. Republic Refining Co.*, 924 F.2d 93 (5th Cir. 1991). Harville's claim fails under *Reeves* however, because as discussed, she failed to establish intentional discrimination by showing that the City's explanation was unworthy of credence. *Reeves*, 530 U.S. at 143.

[27] Futral speculated in her deposition that Harville may have been fired because two of the other deputy clerks were related to Alderwoman Jones and the third was the daughter of the former mayor. "You know, if you really want to know the truth, I think they, you know, didn't want to fire Barbara because she was Sheena's sister. They didn't want to fire Shequala because she was her first cousin. And Kathy had been there a long time and her father was the mayor. That would be you know – so she was the other one. It wasn't because they didn't like her or anything."

decisions based upon discriminatory animus."[28] Harville conflates the two. Further, even if Harville could demonstrate that Alderwoman Jones's nepotistic decision was grounded in racial animus, she has not demonstrated that Jones's discriminatory motive infected the entire board or that the other members were similarly motivated. The Board made the termination decision after a unanimous vote by the five members. Harville does not present evidence that any racial animus by Alderwoman Jones motivated the other members of the Board.[29] At oral argument, Harville's counsel suggested that Harville provided sufficient evidence of Alderwoman Jones's influence because the minutes showed that Jones had suggested that her sister could do the tax work, which later proved to be false. That is insufficient to prove that "a majority of the board had [the requisite] animus."[30]

---

[28] *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 275 (5th Cir. 2006) (per curiam); *see also, e.g.*, *Holder v. City of Raleigh*, 867 F.2d 823, 827 (4th Cir. 1989) ("We are not persuaded that a preference for family members is inevitably the flip side of racial animus for purposes of federal law.").

[29] *Griggs v. Chickasaw Cty., Miss.*, 2019 WL 3229151, at *5 (5th Cir. July 18, 2019) (considering a municipal liability claim under § 1983 and determining that even where there is evidence of animus by individual board members, "the dispositive question is simply whether [the animus] is also chargeable to the Board itself").

[30] *Id.* In a footnote to her reply brief, Harville suggests that a jury could infer that Alderwoman Jones was racially-biased and exercised influence over other members of the board—the cat's paw theory of causation blessed by the Supreme Court in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011). The City responds that Harville waived the argument by failing to raise it until her reply. *See* July 23, 2019 28(j) letter. Even if it was not waived, her cat's paw theory fails. In *Staub*, the Court held that "if a supervisor performs an act motivated by [impermissible] bias that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub*, 562 U.S. at 422. Here, the fatal flaw in Harville's theory is that she failed to present sufficient evidence that Alderwoman Jones's vote was motivated by racial animus. A jury can only make a reasonable inference that Alderwoman Jones's racial animus influenced the other members of the board if there is threshold evidence of Alderwoman Jones's racial animus. To invoke the cat's paw theory of causation, Harville must establish "(1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Robertson*, 373 F.3d at 653 (internal citations omitted). Harville makes no such showing here.

In sum, Harville has failed to provide evidence sufficient to create a genuine issue of material fact that the City's proffered explanation was a pretext for racial discrimination. The Court in *Reeves* reminded that each case will depend "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."[31] Here, Harville does not meet her burden and produce evidence that would allow a finding of unlawful discrimination.

IV.

Harville also challenges the district court's decision to grant summary judgment for the City on her Title VII retaliation claim. To establish a prima facie case of retaliation under Title VII, Harville must show that (1) she engaged in a Title VII protected activity; (2) she was subject to an adverse employment action; and (3) there was a but-for causal connection between her employment in the protected activity and the adverse employment action.[32] It is undisputed that Harville establishes the first two prongs of her prima facie case: on November 3, 2015, she filed her first EEOC charge and on April 20, 2016, she filed her first complaint in this suit—both are protected activities under Title VII. The City chose to hire Lisa Sanford for the position rather than Harville, adversely affecting her. The district court concluded that Harville failed to meet her burden to establish a causal connection between her protected activities and the City's decision not to hire her.

We agree. Temporal proximity between an employer's knowledge of a protected activity and an adverse employment action can constitute sufficient evidence of causality to establish a prima facie case, but that proximity must be "very close."[33] Harville's first EEOC complaint was filed in November 2015.

---

[31] *Reeves*, 530 U.S. at 148–49.

[32] *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017).

[33] *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

On appeal, she urges that she suffered her first adverse employment action when the City posted the job in March 2016, she applied, and the City decided not to interview her. But the City did not interview any candidate at that time and Harville *was* granted an interview when the City decided to start conducting interviews in November 2016. The temporal proximity between her first EEOC charge and the City's decision to hire Sanford—12 months—is not sufficient to establish her prima facie case.[34] While Harville supplemented her EEOC charge twice and filed her legal complaint on April 20, 2016, the temporal clock does not "re-start" with each protected activity.[35] The relevant protected activity was her first EEOC charge filed in November 2015, a full year before the City's decision to hire Sanford.

Even assuming Harville could make out her prima facie case, she has not produced sufficient evidence that the City's legitimate, non-retaliatory rationale for its hiring decision was pretextual. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[36] The City states that it chose not to interview any candidate when the job was first posted because of budgetary restraints and justifies its decision to hire Sanford instead of Harville based on Sanford's accounting degree and thirty years of accounting experience. This is borne out by the record—Board minutes document discussions reflecting the cost-savings of keeping the Clerk's position vacant and explain the decision to change the job-posting, opening it to part-

---

[34] *Gorman v. Verizon Wireless Texas, LLC*, 753 F.3d 165, 171 (5th Cir. 2014) (holding that ten months was too long to establish the temporal proximity necessary to make the third prong of plaintiff's prima facie case).

[35] *Alkhawaldeh*, 851 F.3d at 422 n.23 ("But a Title VII claimant cannot, with each protected activity, re-start 'the temporal-proximity clock.'").

[36] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (internal quotation marks omitted)).

time applicants and adding a preferred accounting degree qualification.[37] Harville does not raise a genuine issue of material fact that the City's reasons were pretext for its retaliatory motives. While she highlights her experience in the office, she cannot show that she was "clearly better qualified" than Sanford given Sanford's education and experience.[38] Even if Harville could establish a prima facie case, and we agree with the district court that she could not, the City provided legitimate, non-retaliatory reasons for its delay in conducting interviews and its decision to hire Sanford, which Harville was unable to demonstrate were unworthy of credence.

## V.

We affirm the decision of the district court.

---

[37] While Harville objects to the district court's consideration of the affidavit of Alderman Thomas, contending that he was an interested witness and the court may only credit the evidence of the movant that comes from a disinterested witness. We have rejected this argument. *Robertson*, 373 F.3d at 653. As in *Robertson*, the record here indicates that Thomas's affidavit was uncontradicted and unimpeached and Harville presents no evidence that the City relied on impermissible considerations. *Id.*

[38] *Moss*, 610 F.3d at 923; *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (emphasizing that experience does not alone establish qualification).