# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2022

Lyle W. Cayce
Clerk

No. 19-20656

Equal Employment Opportunity Commission,

*Plaintiff—Appellant*,

Magali Villalobos,

*Intervenor Plaintiff—Appellant*,

*versus*

Ryan's Pointe Houston, L.L.C.; Advantage Property
Management, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2782

Before Richman, *Chief Judge*, and Higginbotham and Willett,
*Circuit Judges*.

Priscilla Richman, *Chief Judge*:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20656

The Equal Employment Opportunity Commission filed suit against Ryan's Pointe Houston, L.L.C. and Advantage Property Management, L.L.C., alleging the companies had engaged in national origin and sex-based discrimination.  Magali Villalobos, the subject of the adverse employment action at issue, intervened.  The district court granted summary judgment in favor of the defendants.  We reverse and remand for further proceedings.

**I**

Magali Villalobos is a United States citizen originally from Mexico.  Villalobos previously served as a property manager for Ryan's Pointe Houston (Ryan's Pointe), the owners of a 280-unit apartment complex managed by Advantage Property Management (Advantage).  She was fired from that position on March 21, 2012.  Villalobos subsequently alleged that this adverse employment action was the result of national origin and sex-based discrimination.

Villalobos was originally hired as a leasing agent at the complex in May of 2011.  Tawana Rowghani, who was then serving as the complex's property manager, interviewed Villalobos for that position.  Rowghani had worked with Villalobos previously and was excited at the prospect of the two working together again.  At the time Villalobos was hired, the complex was owned and operated by CNC Management.  Villalobos was subsequently promoted to assistant manager.

During Villalobos's tenure as assistant manager, Ryan's Pointe took ownership of the apartment complex.  Ryan's Pointe's owners, including Robert Hayman, Michael Treiman, and Julian Blum, had purchased the property in order to renovate it and resell it for a profit.  Initially, Blum oversaw the day-to-day management of the property.  Accordingly, Villalobos reported to Rowghani who, in turn, reported to Blum.

Rowghani's role began to expand almost immediately after Ryan's Pointe took ownership of the complex. Specifically, Rowghani became a regional director, responsible for overseeing several apartment complexes owned by Ryan's Pointe. To backfill her previous position, Rowghani eventually decided to interview Villalobos for the property manager position. Blum also interviewed Villalobos before she was hired as the complex's property manager on January 1, 2012.

Around the time Villalobos began serving as property manager, a series of management changes occurred at Ryan's Pointe. Hayman fired Rowghani, and Blum ceased overseeing the day-to-day management of the complex. A belief that the property was underperforming prompted both personnel changes. Hayman and Treiman then formed Advantage in order to manage the apartment complex. On February 9, 2012, Advantage hired Bobbie Dusek to serve as regional supervisor. Dusek then began a thirty-day review of each of her subordinates, one of whom was Villalobos.

As part of this review, Dusek immediately came to question Villalobos's job performance. According to her deposition testimony, Dusek grew concerned with at least three aspects of Villalobos's job performance. First, Villalobos was allegedly failing to prepare vacant units for rental in a timely manner. Second, Villalobos was allegedly failing to submit invoices in a timely fashion. Lastly, Villalobos was supposedly doing a poor job of managing the complex's delinquencies—the outstanding receivables that result when tenants fail to pay rent on time. The January and February delinquency reports, for example, showed $11,567.63 and $7,128.40 in delinquencies, respectively. According to Dusek, the complex's delinquencies should not have exceeded $2,000. In an effort to correct these deficiencies, Dusek allegedly provided Villalobos with oral and written warnings that her job performance fell below standards.

On February 28, 2012, well within her thirty-day review period, Dusek hired a headhunter to find a replacement for Villalobos. The headhunter was instructed to keep the inquiry "super confidential." Shortly thereafter, Dusek interviewed Rebecca Johnson for the position. Johnson, who appears white, was ultimately hired as the complex's property manager on March 9th. Dusek then fired Villalobos on March 21st. According to Dusek, her decision was based entirely on Villalobos's poor job performance.

Villalobos was immediately concerned that her firing had not, in fact, been motivated by her performance as the property's manager. She filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging she was fired because of her national origin and because she had recently informed her employers that she was pregnant. The EEOC subsequently filed suit against Ryan's Pointe and Advantage under Title VII. Villalobos intervened on behalf of the plaintiff.

Taken in the light most favorable to the EEOC, resulting discovery in the case revealed a highly toxic work environment at Ryan's Pointe and Advantage.[1] According to deposition testimony, Hayman, Blum, and Treiman expressed a desire to change "the demographics" of the complex, a term several witnesses testified was often times synonymous in the industry with the race of the tenants. Testimony also indicated that Hayman referred to a tenant as "a trashy Mexican" and that Blum referred to a tenant as "a dumb Mexican." Some of the owners were likewise alleged to have made improper comments about the racial makeup of the staff. Hayman, for instance, expressed dismay at the fact that the office staff were "all

---

[1] *See Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 425-26 (5th Cir. 2017)) (noting that appellate courts "review a district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in a light most favorable to the non-moving party").

Mexicans." Both Hayman and Treiman likewise expressed a desire to "change the demographic[s]" of the staff.

Testimony also called into question Dusek's contention that Villalobos was fired entirely based on her poor job performance. According to an affidavit Dusek provided to the EEOC, she was told by Hayman and Treiman to begin "working toward" Villalobos's termination when she started work at Advantage. Importantly, Hayman had also told Dusek to hire a "higher class of individual with the look of Ken and Barbie," which Dusek understood as a hiring preference for those who are "petite, attractive, young[,] and Caucasian." Indeed, Hayman's preference for a "white" staff was made known on multiple occasions. Evidence likewise seemingly contradicts Dusek's assertions that Villalobos received oral and written warnings concerning her job performance. According to Villalobos, she was never counseled on her allegedly poor job performance. Furthermore, the written counseling Dusek allegedly provided Villalobos was never signed and was provided while Villalobos was on vacation.

Finally, discovery produced evidence suggesting that Villalobos's pregnancy may have played a role in her firing. When Blum discovered in January of 2012 that Villalobos was expecting a child, he became frustrated and stated that he believed she would take her full Family and Medical Leave Act (FMLA) entitlement because "all Mexicans do that." Although Blum was no longer involved with the day-to-day management of the complex at the time Villalobos was fired, he remained an investor in the complex and attended monthly conference calls with the other investors. Evidence suggests Dusek too was aware of Villalobos's pregnancy prior to Villalobos's termination. Upon learning of the pregnancy, Dusek allegedly told Villalobos that she should consider getting an abortion because her "job was taking off." Dusek would also later tell Hayman and Treiman that Villalobos was

No. 19-20656

pregnant and allegedly told Johnson that she was instructed to fire Villalobos because Villalobos "was Hispanic, and [because] she was expecting."

Following discovery, Ryan's Pointe and Advantage moved for and were granted summary judgment on both of the EEOC's claims. The district court concluded, inter alia, that Villalobos could not make out a prima facie case of discrimination because she was not qualified to serve as the complex's manager in the first place. The court likewise concluded summary judgment was appropriate because Villalobos had allegedly been fired entirely based on her poor job performance. This appeal followed.

## II

On appeal, the EEOC argues that the district court erred in granting summary judgment on both the national origin discrimination claim and the sex-based discrimination claim. Our court reviews "a district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in a light most favorable to the non-moving party."[2] Granting "[s]ummary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Under these standards, we conclude that the district court erred in granting summary judgment as to both claims.

## A

We first consider the national origin discrimination claim. To prevail under Title VII, "a plaintiff may present [his or her] case by direct or

---

[2] *Harville*, 945 F.3d at 874 (emphasis omitted) (citing *Alkhawaldeh*, 851 F.3d at 425-26 (5th Cir. 2017)).

[3] *Id.* (internal quotation marks omitted) (quoting FED. R. CIV. P. 56(a)).

circumstantial evidence, or both."[4]   On appeal, the EEOC argues that it could produce both sufficient direct and circumstantial evidence of national origin discrimination such that summary judgment was inappropriate. Although direct evidence is "rare in discrimination cases,"[5] we agree that the proffered direct evidence of discrimination was sufficient to survive summary judgment.  Therefore, we need not consider whether the EEOC presented sufficient circumstantial evidence of national origin discrimination.[6]

In Title VII cases, our court distinguishes between direct evidence of discrimination—those "statement[s] or written document[s] showing a discriminatory motive on [their] face"[7]—and "stray remarks"—which fall short of demonstrating discriminatory animus on their face.[8]  We consider four factors in making this distinction: "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the

---

[4] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

[5] *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)).

[6] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) (per curiam) (emphasis omitted) ("If there is direct evidence that an employer placed substantial negative reliance on an illegitimate criterion in reaching an employment decision, . . . resort to inferential methods of proof is unnecessary."); *see also Sandstad*, 309 F.3d at 896 (emphasis added) (citing *Russell*, 235 F.3d at 222) (noting that "a plaintiff may present [her] case by direct *or* circumstantial evidence, *or* both").

[7] *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994)).

[8] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir.), *as revised* (Feb. 3, 2015).

challenged employment decision."[9]  In considering the proffered evidence, "our ultimate focus"[10] remains whether the statements or documents demonstrate "discriminatory animus without inference or presumption."[11]

In this case, viewing the evidence in the light most favorable to the EEOC, the evidence demonstrates clear discriminatory motive on its face without the need for inference.  Hayman expressed dismay at the fact that the office staff were "all Mexicans."  Both Hayman and Treiman similarly expressed a desire to "change the demographic[s]" of the staff.  Further, Hayman made his preference for a "white" staff known on multiple occasions.  Hayman also told Dusek to hire a "higher class of individual with the look of Ken and Barbie" to replace Villalobos, which Dusek understood as a hiring preference for those who are "petite, attractive, young[,] and Caucasian."  That Dusek later admitted to a co-worker that she was told to fire Villalobos because Villalobos was Mexican lends credence to these allegations, as do Hayman's additional statements, described above, which disparage people from Mexico more broadly.

These statements meet all four factors that distinguish direct evidence of discrimination from "stray remarks."  First, the statements relate directly to Villalobos's national origin.  Villalobos is from Mexico and the statements show dismay at the "Mexican" staff and a desire to "change the demographic[s]" of the staff to be more "white."  Second, these statements were proximate in time to the adverse employment action, namely Villalobos's termination.  Third, the statements were made by a person with

---

[9] *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).

[10] *Id.*

[11] *Sandstad*, 309 F.3d at 897 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

authority over Villalobos's termination.  We have stated that "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker."[12]  Hayman and Treiman, as owners of Ryan's Pointe, were in a position to influence Villalobos's termination.  Further, Dusek terminated Villalobos at the instruction of Hayman and Treiman.  Dusek believed she would "absolutely" lose her job if she did not terminate Villalobos.  Thus, Dusek merely "rubber stamped" the wishes of Hayman and Treiman.[13]  Fourth, the statements relate to Villalobos's termination.  As described above, the comments show dismay that the staff was "Mexican" and a preference for a "white" staff.  Further, Hayman and Treiman wanted to terminate Villalobos in order to "change the demographic[s]" of the staff" and hire a "higher class of individual with the look of Ken and Barbie." Thus, all four factors are met in this case.

Furthermore, this evidence is similar to that which we held to be direct evidence of discrimination in *Jones v. Robinson Property Group, L.P.*.[14]  There, the plaintiff alleged he was not hired as a poker dealer due to being African American.[15]  The plaintiff presented evidence that (1) the manager or the manager's assistant stated that "they hired who they wanted to hire and there [sic] were not going to hire a black person unless there were extenuating circumstances," (2) the manager or the manager's assistant stated that "good old white boys don't want blacks touching their cards in their face," and (3) the manager stated that "maybe I've been told not to hire too many

---

[12] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

[13] *See Russell*, 235 F.3d at 226-27 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 307 (5th Cir. 1996)).

[14] 427 F.3d 987 (5th Cir. 2005).

[15] *Id.* at 989-90.

blacks in the poker room."[16] We stated that, "viewing the evidence in the light most favorable to [the plaintiff]," these statements showed that race was "a factor in employment decisions, which is by definition direct evidence of discrimination."[17] Similarly, the evidence presented by the EEOC shows that national origin was a factor in employment decisions at Ryan's Pointe.

Because the EEOC has proffered sufficient direct evidence of discrimination, "the burden of proof shifts to [Ryan's Pointe and Advantage] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor."[18] Thus, at summary judgment, they "must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination."[19]

Ryan's Pointe and Advantage argue that Villalobos was terminated due to her poor job performance and that this is evident in the "excessive rental delinquencies." However, the record is replete with evidence suggesting the proffered justification was pretextual. For instance, the January and February delinquency reports—the only two delinquency reports available before the adverse employment action occurred—actually showed a sizable decrease in delinquencies over the course of the two months. Evidence also suggests Villalobos was not in fact counseled on her allegedly poor job performance. Finally, the fact that Villalobos was given almost no time to correct her deficiencies likewise suggests the proffered

---

[16] *Id.* at 993.

[17] *Id.*

[18] *Hamilton v. Dallas Cnty.*, 42 F.4th 550, 554 (5th Cir. 2022) (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir.), *as revised* (Feb. 3, 2015)).

[19] *Etienne*, 778 F.3d at 477.

No. 19-20656

reason for her firing was mere pretext.  This evidence is sufficient to survive summary judgment.

**B**

We now turn our attention to the EEOC's sex-based discrimination claim.  On appeal, the EEOC acknowledges that there is no direct evidence to support this claim.  The EEOC contends, however, that it proffered sufficient circumstantial evidence of discrimination such that summary judgment was inappropriate.  We agree.

Our court applies the *McDonnell Douglas*[20] burden-shifting framework when evaluating discrimination claims supported by circumstantial evidence.[21]  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  That is, the plaintiff must show "that she (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class."[22]  The prima facie case establishes a "presumption of discrimination"; the defendants must thereafter "articulate a legitimate, non-discriminatory reason for the adverse employment action."[23]  If the defendant is able to do so, "the burden shifts back to [the plaintiff] to demonstrate that the employer's proffered reason is

---

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[21] *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[22] *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017)); *see also Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)) (noting that "[o]nly a minimal showing is necessary to" establish a prima facie case of discrimination).

[23] *Harville*, 945 F.3d at 875 (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

a pretext for discrimination."[24]  Here, the EEOC can establish a prima facie case of pregnancy discrimination and has likewise created a genuine issue of material fact as to whether the proffered reason for Villalobos's firing was pretextual.

As to the EEOC's prima facie case, the only significant dispute between the parties concerns whether Villalobos was qualified to serve as property manager.  That is, Ryan's Pointe and Advantage do not seriously challenge that Villalobos was a member of a protected class, was subject to an adverse employment action, and was replaced by an individual outside of her protected class.  Villalobos was pregnant when she was fired, and she was replaced by a woman who was not pregnant at the time she was hired.  Ryan's Pointe and Advantage contend, however, that Villalobos was never in fact qualified to serve as the property's manager.

According to our prior cases, "a plaintiff challenging [her] termination . . . can ordinarily establish [that she was qualified] by showing that [she] *continued to possess* the necessary qualifications for [her] job at the time of the adverse action."[25]  That is, the plaintiff must ordinarily show that she did "not suffer[ a] physical disability or loss of a necessary professional license or some other occurrence that rendered [her] unfit for the position

---

[24] *Id.* (internal quotation marks omitted) (quoting *Alkhawaldeh*, 851 F.3d at 426).

[25] *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) (emphasis added) (applying this test in the ADEA context), *abrogated on other grounds by Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 829 n.15 (5th Cir. 2022); *see also Bauer*, 169 F.3d at 966 (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)) (indicating that the qualification inquiry pursuant to the ADEA and Title VII in the wrongful discharge context are "identical").

for which [she] was hired."[26] Our inquiry typically focuses on "objective job qualifications (e.g., training, experience, and physical capacity)."[27] Subsequent issues with an employee's *performance*—although relevant to the second and third phases of the *McDonnell Douglas* framework—are irrelevant when addressing whether the employee was *qualified* for the position originally.[28]

Under these standards, the EEOC can make the "minimal showing . . . necessary to" survive summary judgment.[29] In this case, it is reasonable and appropriate to infer that Villalobos was qualified for her last position from the fact that she was hired to fill that position less than three months before being fired.[30] As our precedents make clear, the fact that an employee was hired for a particular position does not automatically demonstrate that he or she was qualified for that position.[31] But here, the inference is more than appropriate. Villalobos was hired only a few months before being fired. She was hired from within, indicating her employer knew of both her qualifications and potential prior to her promotion. Finally, she

---

[26] *Bienkowski*, 851 F.2d at 1506 n.3; *see also Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 562 F. App'x 209, 211 n.3 (5th Cir. 2014) (per curiam) (referencing this language when addressing the plaintiff's Title VII claim).

[27] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 n.7 (5th Cir. 2015).

[28] *See Bienkowski*, 851 F.2d at 1506.

[29] *Bauer*, 169 F.3d at 967 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

[30] S*ee Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (noting our "agree[ment in that case] with the district court's inference that [the plaintiff's] initial hiring demonstrate[d] her qualification"); *see also Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 357 n.1 (5th Cir. 2009) (per curiam) (noting that the defendant's "argument that [the plaintiff] lacked the minimum qualifications for the position [was] belied by the fact that [the defendant] hired [the plaintiff] in the first place").

[31] *See Bienkowski*, 851 F.2d at 1505-06.

was interviewed by Blum—one of Ryan's Pointe's owners—prior to being hired, suggesting upper-level management approved of her promotion. This reasonable inference, coupled with the fact that the record fails to indicate an "occurrence that [subsequently] rendered [her] unfit for the position for which [she] was hired," supports the conclusion that Villalobos was in fact qualified to serve as property manager when her employment was terminated.[32]

Nor does the contrary evidence highlighted by Ryan's Pointe and Advantage entitle them to judgment as a matter of law. On appeal, they stress throughout their brief their desire for a property manager with renovation experience. But whether renovation experience constituted a necessary employment qualification is a disputed question of fact. The "super confidential" job posting, for example, although mentioning that the property was undergoing a renovation, failed to indicate that renovation experience constituted a "required skill[]." Moreover, even assuming Villalobos lacked renovation experience, the fact that she was promoted from within several months after Ryan's Pointe became the owner of the complex with the intention of renovating it suggests renovation experience did not in fact constitute a necessary job qualification. The record—taken in the light most favorable to the EEOC—suggests renovation experience was not a *necessary* job qualification.

The remaining evidence proffered by Ryan's Pointe and Advantage does not fare any better. They direct our attention to Dusek's assessment that Villalobos "was promoted to a position that she was never qualified or trained to do"; Johnson's experience with properties undergoing renovations and her comparatively greater experience in the industry; and

---

[32] *Bienkowski*, 851 F.2d at 1506 n.3.

the fact that Johnson was able to improve the property's performance after coming aboard. But Dusek's *subjective* assessment of Villalobos's qualifications does not sufficiently demonstrate that Villalobos lacked an *objective* qualification at the time of termination.[33] Similarly, Johnson's qualifications and subsequent performance as property manager do not speak to whether *Villalobos* was qualified to serve in that capacity. Thus, notwithstanding Ryan's Pointe's and Advantage's arguments to the contrary, the EEOC proffered sufficient evidence of Villalobos's qualifications to establish a prima facie case of discrimination.

Because the EEOC has sufficiently established a prima facie case of discrimination, the burden shifts to Ryan's Pointe and Advantage to "articulate a legitimate, non-discriminatory reason for the adverse employment action."[34] Their proffered reason for Villalobos's termination—poor job performance, namely a failure to reduce delinquencies—meets their burden.[35] Several witnesses, including Villalobos, noted that the delinquencies for the complex were higher than they should be. Further, Dusek noted that it was Villalobos's supposedly poor job performance that prompted her termination.

Nevertheless, because there are genuine issues of material fact as to whether this proffered rationale was merely pretextual, summary judgment

---

[33] *See Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 562 F. App'x 209, 211-12 (5th Cir. 2014) (per curiam) (collecting cases in which we have concluded plaintiffs were not qualified because of their failure to meet objective qualifications for employment).

[34] *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

[35] *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015); *see also Allaudin v. Perry's Rests., Ltd.*, 805 F. App'x 297, 298-300 (5th Cir. 2020) (per curiam).

was inappropriate.[36]   As described above, the record contains evidence suggesting this justification was pretextual.  This evidence includes a decline in delinquencies over the two months of Villalobos's tenure as property manager, evidence that Villalobos was not counselled regarding her job performance, and the limited time Villalobos was provided to correct her alleged deficiencies.

The EEOC likewise produced the following evidence which directly supports the conclusion that Villalobos's pregnancy played a role in her termination: testimony that Dusek suggested Villalobos should get an abortion because her "job was taking off," testimony that Blum was frustrated when he found out Villalobos was pregnant because she would seek to take her full FMLA entitlement; testimony that Hayman and Treiman were aware of Villalobos's pregnancy; and Johnson's statement that Dusek was allegedly told to fire Villalobos because she was pregnant.  Collectively, this evidence demonstrates that the leadership in both companies were subjectively aware of Villalobos's pregnancy and that Villalobos's pregnancy arguably played a role in the ultimate decision to terminate her employment.

Dusek's testimony that she fired Villalobos entirely based on Villalobos's job performance is insufficient to defeat summary judgment. Fully crediting Dusek's *post hoc* conclusion that her actions were proper and legal is inappropriate at this stage in the proceedings.  A jury may ultimately decide to credit Dusek's assertions.  But in the current posture, when we are

---

[36] *See Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (noting that the third step of the *McDonnell Douglas* framework requires "the plaintiff [to] produce substantial evidence of pretext"); *see also id.* (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)) ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." "[A]n employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief.").

required to take the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant, there exists a genuine issue of material fact as to whether the proffered reason for Villalobos's firing was pretextual. Accordingly, the district court erred in granting summary judgement as to the EEOC's sex-based discrimination claim.

*     *     *

The district court's judgment is REVERSED and the case is REMANDED for further proceedings.