# NO. 12-23-00144-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICKEY M. HADNOT,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *LUFKIN INDEPENDENT SCHOOL DISTRICT,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

Mickey M. Hadnot appeals the trial court's order granting summary judgment against him and in favor of Lufkin Independent School District (the District). In a single issue, Hadnot argues that the evidence raises a genuine fact issue regarding whether the District racially discriminated in failing to hire him. We affirm.

## BACKGROUND

On June 10, 2019, the District issued a job posting to fill two available school resource officer positions. A District officer informed Hadnot of the openings, and he applied June 14. Hadnot is black.

According to Hadnot's application, he earned a bachelor's degree in criminal justice in 1988. He worked for the Lufkin Police Department as a patrol officer until 1992, when he was

hired as the District's first school resource officer. In 1994, Hadnot left the District to pursue a career with the Texas Department of Public Safety (DPS), where he served as Lieutenant at the time of his application. In addition to his employment history, Hadnot shared in his application that he was a Lufkin Little League Baseball board member, a Lufkin Park board member, the Lufkin Youth Basketball president, and spoke "polite" Spanish.

Juan Jose "Gilbert" Tinajero, who is Hispanic and fluent in Spanish, also applied. A Lufkin High School graduate, he earned an associate's degree in criminal justice in 2003 and completed police academy training in 2004. Tinajero worked as a construction estimator from 2004 to 2017, while serving as a reserve officer with the Angelina County Sheriff's Office from 2004 to 2007 and the Diboll Police Department from 2007 to 2014. He performed additional work as a private investigator beginning in 2012. At the time of his application, Tinajero owned and operated a private investigation company.

On July 25, 2019, a panel of eight District employees interviewed six applicants, including Hadnot and Tinajero, for the positions. The remaining applicants interviewed were Jeff Taylor, who is black; Mark Guerra, who is Hispanic; Zach Nick, who is white; and Geoffrey Gordon, who is white. The panel members included Police Chief Jay Jost, who is white; Lieutenant David Rodriguez, who is Hispanic; Officer Ralph Bean, who is black; Officer Tamesha Forrest, who is white; alternative school principal Scott Walters, who is white; associate principal Andres Mijares, who is Hispanic; student support director Gina Green, who is white; and at-risk coordinator Joe Martinez, who is Hispanic.

During the interviews, the panel members used evaluation forms containing preprinted interview questions with space to write comments and rate responses. The following statement appears near the top of the forms:

> Purpose – This evaluation form is to standardize the recording of information collected during an interview and to assist in evaluating and comparing different applicants when interviews are conducted. Interviewers are encouraged to use the comments section to support each applicant's rating. This form is to be completed during and/or immediately following the interview.
>
> **Rating Key – N/A** *Not applicable,* **1** *Unsatisfactory,* **2** *Average,* **3** *Exceptional*

All panel members fully completed the forms except Chief Jost, who wrote comments for most of the items but failed to rate many items. After the forms were tendered, Lieutenant Rodriguez

gave each panel member a sheet of paper on which to rank the applicants. Jost later recommended that the District hire Taylor and Tinajero.

When Hadnot was rejected, he filed a race discrimination complaint with the Equal Employment Opportunity Commission (EEOC), which dismissed the case based on the District's decision to hire Taylor. He subsequently filed this race discrimination suit against the District under the Texas Commission on Human Rights Act (TCHRA)—Chapter 21 of the Texas Labor Code. In his petition, Hadnot alleged that (1) Lieutenant Rodriguez accused Hadnot and Taylor of applying in an attempt to "take his job," (2) Rodriguez, Tinajero, and Officer Forrest were photographed "partying in Mexico" less than a month before the interview panel was assembled, (3) Rodriguez stacked the interview panel with Tinajero's friends, (4) Forrest insisted the panel select a Spanish-speaking applicant, (5) the panel ignored Hadnot's qualifications and experience, (6) Forrest suggested that Hadnot's and Taylor's extensive law enforcement experience would impede their ability to follow Rodriguez's instructions, (7) Tinajero was unqualified for the position, (8) Taylor assured Rodriguez he had no desire to supervise, (9) Chief Jost told the panel Hadnot made too much money to be considered for the position, (10) the panel made known it would not hire two black applicants, (11) Forrest told the panel she and Tinajero were close friends, and (12) Walters told the panel his and Tinajero's daughters were best friends.

The District filed a no-evidence and traditional summary judgment motion, asserting Hadnot had no evidence that the District's proffered reasons for hiring Tinajero were a pretext for race discrimination. It explained the hiring decision as follows:

> The District selected Taylor and Tinajero based on all of the information gathered during the interview process, including the panel's overall rankings of the candidates. Although Tinajero was admittedly less experienced than veteran police officers like Hadnot and Taylor, the panel thought Tinajero had a good personality and believed that he would interact well with students— qualities that are very important to school-based police departments. Ultimately, Chief Jost believed that Tinajero was a better fit for the position than Hadnot.

In Chief Jost's attached declaration, he explained his decision to recommend Tinajero as follows:

> The evaluation forms provided some information to objectively evaluate and compare the candidates, but the hiring decision was not based on the scores alone. After all of the interviews were complete, Lt. Rodriguez asked the panel members to rank the candidates in order of preference based on their overall impressions of the candidates. This gave the panel the opportunity to consider legitimate factors other than a candidate's scored answers, such as their personality and overall demeanor.

3

. . . .

> Based on the information gathered during the interviews, I recommended to Superintendent Torres that Lufkin ISD hire both Jeffrey Taylor and Gilbert Tinajero.

. . . .

> Although Officer Tinajero was not as experienced as Officer Hadnot, several members of the panel noted that he was very likeable and seemed like he would work well with kids. I found Officer Tinajero to be very personable, and I believed that hiring him over Officer Hadnot would be in the best interest of the District due to his likely ability to build good relationships with students. Personality and demeanor are important aspects of school-based policing because police officers frequently interact with students and their families. Overall, the school environment is very different than most traditional law enforcement agencies, and having extensive law enforcement experience does not necessarily mean that a candidate is the best fit for a school district police department.

. . . .

> I did not consider the race of any of the candidates when I recommended that Lufkin ISD hire Officer Taylor and Officer Tinajero. I have known Mickey Hadnot for several years. His race was not a factor in my decision to recommend Officer Taylor and Officer Tinajero.

In response to the District's motion, Hadnot argued that he presented evidence raising genuine fact issues regarding whether (1) race discrimination motivated the District's hiring decision, (2) the District's preference for bilingual candidates was a pretext for race discrimination, and (3) the District's personal favoritism or "cronyism" is evidence of race discrimination. Regarding whether race discrimination motivated the decision, Hadnot noted that Officer Bean was the only black panel member, asserted without evidence that Bean was included only at Bean's insistence, and presented evidence that Bean was not yet designated as a panel member as little as a week before the interviews.[1] Additionally, alleging that discrimination was Chief Jost's and Lieutenant Rodriguez's "standard business practice," Hadnot presented evidence that Rodriguez coached District Officer Howard McDaniel, a friend of Rodriguez, and whose race is not evident from the record, for his interview in 2017. Finally, Hadnot cited evidence that before the July 2019 interviews, Rodriguez told McDaniel that Hadnot previously filed a grievance regarding his son's sports activities and likely would not be granted an interview.

Regarding whether the District's alleged bilingual preference was a pretext for race discrimination, Hadnot cited evidence that Officer McDaniel does not speak Spanish and was not

---

[1] Hadnot presented no evidence regarding the timing of the remaining panel members' designation.

coached by Rodriguez regarding his Spanish-speaking status. Additionally, he cited evidence that bilingualism was not listed as a preference in the job posting and the District failed to hire Hadnot despite his "polite" oral Spanish proficiency. Hadnot asserted without evidence that the District hired two nonbilingual officers later in 2019[2] and bilingualism was not listed as a preference in postings until 2021.

Regarding whether the District's cronyism was evidence of race discrimination, Hadnot contended that Chief Jost and Lieutenant Rodriguez made a standard practice of hiring applicants associated with the "East Texas Regulator's Mud Buggy Club" and "conspired to hire their good friend Tinajero," who belonged to the club, despite his lack of qualifications. He cited evidence showing that District Officers Tinajero, Paco Alvarez, and Jacob Bailey were club members and that "each time an opening has occurred since Rodriguez has been lieutenant, one of the openings is awarded to a member of the East Texas Regulator's Mud Buggy Club." Additionally, Hadnot cited evidence that Tinajero and Officer Forrest attended Rodriguez's wedding in Mexico.

Further regarding cronyism, Hadnot contended that Chief Jost attempted to conceal his discrimination by fabricating Tinajero's background check and perjuring himself regarding the background check in his declaration to the trial court. According to Jost's "F5R History and Employment Verification" form for Tinajero, Jost contacted Diboll Police Chief Steve Baker, Angelina County Sheriff Greg Sanches, Angelina County Chief Deputy Roy Owens, and former Diboll Police Chief Ricky Conner. However, the evidence showed that none of these officers remembered talking to Jost about Tinajero. Additionally, the form's handwritten contact dates for Baker, Sanches, and Owens appear partially overwritten and, according to a handwriting expert, were written originally either as "7/7/2019" and overwritten as "8/7/2019," or vice versa. Based on this evidence, Hadnot believed that Jost completed Tinajero's F5R form on July 7, warned him about his general discharge from the Diboll Police Department, and instructed him

---

[2] District Superintendent Lynn Torres testified in her deposition that the District hired two additional officers in 2019. She first testified that the officers were Terry and Alvarez (a native Spanish speaker). Later, in response to the question of when "Nick and Gordon" were hired, Torres answered that "Nick and Alvarez" were hired "later that semester" after Taylor and Tinajero. Upon further questioning regarding whether the next officers hired were "Nick and Gordon," she responded that Gordon was not a District employee, and Nick was a District employee, but the next officers hired were Terry and Alvarez. Hadnot's attorney eventually stated, "I apologize. I gave you the name Gordon and Nick as having been the two Anglo guys that succeeded the hiring of—succeeded the hiring of Tinajero and Taylor. But actually I should have given you the name Jacob Bailey." Torres responded, "Right."

on measures to change it to an honorable discharge. Hadnot argued that the foregoing evidence indicates the District's "hiring practices go well beyond the scope of a mere personal preference or 'cronyism'" and "shows that this was a concerted and coordinated effort on the part of Chief Jost and Lieutenant Rodriguez to use discriminatory hiring practices against extremely qualified applicants of color to hire their friends who have none of the qualifications required for the position."

The trial court granted the District's summary judgment motion. Hadnot filed a motion for new trial, which the court denied. This appeal followed.

**SUMMARY JUDGMENT**

In his sole issue, Hadnot argues that a genuine issue of material fact regarding race discrimination in the District's hiring decision was established by his prima facie case combined with evidence of the falsity of the District's explanation, and his case is strengthened by evidence of his superior qualification level, violations by the District of its policies and practices during the interview process, and Rodriguez's preference for nonblack subordinates from his social circle.

## Standard of Review

We review a trial court's summary judgment de novo. ***Travelers Ins. v. Joachim***, 315 S.W.3d 860, 862 (Tex. 2010). A no evidence summary judgment motion must state the elements as to which there is no evidence, but the movant need not produce any proof in support of its no evidence claim. ***DeGrate v. Exec. Imprints, Inc.***, 261 S.W.3d 403, 407 (Tex. App.—Tyler 2008, no pet.). The motion is properly granted if the nonmovant fails to bring forth more than a scintilla of evidence to raise a genuine fact issue as to an essential element of his claim for which he would have the burden of proof at trial. ***Id.***; *see* ***Merrell Dow Pharm., Inc. v. Havner***, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." ***Merrell Dow***, 953 S.W.2d at 711. In contrast, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. ***Kindred v. Con/Chem, Inc.***, 650 S.W.2d 61, 63 (Tex. 1983). A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Harville v. City of Houston, Mississippi***, 945 F.3d 870, 874 (5th Cir. 2019).

6

To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Priddy v. Rawson*, 282 S.W.3d 588, 592 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). When reviewing a summary judgment, we "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

When, as here, a party moves for both traditional and no evidence summary judgment, and the determination of the no evidence summary judgment could make the grounds asserted in the traditional motion moot, we first review the trial court's ruling under the no evidence standard of review. *See Merriman v. XTD Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no evidence motion, we do not consider the complaints raised regarding the traditional summary judgment motion. *Ridgway*, 135 S.W.3d at 600.

## Applicable Law

Under the TCHRA, an employer commits an unlawful employment practice if, because of race, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE ANN. § 21.051(1) (West 2021). Generally, "an unlawful employment practice is established when the complainant demonstrates that race . . . was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" *Id*. § 21.125(a) (West 2021). An exception to this rule lies where "race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force." *Id.* The Texas Legislature patterned the TCHRA after federal law to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (quoting TEX. LAB. CODE ANN. § 21.001(1)).

7

Accordingly, Texas courts follow analogous federal precedent for guidance when interpreting the TCHRA. *Id.* at 476.

In discriminatory treatment cases, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000); *Quantum*, 47 S.W.3d at 477. To establish a prima facie case of discriminatory failure to hire, the plaintiff must show that (1) he belongs to a protected class, (2) he applied and was qualified for a job for which the employer was seeking applicants, (3) the employer rejected him despite his qualifications, and (4) the employer hired someone outside the protected class or continued to seek applicants with the plaintiff's qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S.792, 802-03, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973); *Elgahil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied). The establishment of a prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981); *Quantum*, 47 S.W.3d at 477.

When the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for rejecting the plaintiff. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Quantum*, 47 S.W.3d at 477. The employer's burden to produce a legitimate, nondiscriminatory reason for failing to hire the plaintiff is one of production only, not persuasion. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 437-38 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

If the employer carries its burden of production, the presumption of discrimination is eliminated. *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106; *Quantum*, 47 S.W.3d at 477. The burden then shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is not true and is a pretext for discrimination, or (2) the employer's reason, though true, is but one of the reasons for its decision, and another motivating factor is the plaintiff's protected characteristic. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Quantum*, 47 S.W.3d at 480. TCHRA violations may be established with direct or circumstantial evidence. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781 (Tex. 2018). Whether the evidence is direct or circumstantial, the burden of persuasion always remains with the plaintiff. *Id.* at 782.

A plaintiff can show pretext through evidence that the employer's proffered reason is false or unworthy of credence. ***Moss v. BMC Software, Inc.***, 610 F.3d 917, 922 (5th Cir. 2010). Alternatively, a showing that the plaintiff was "clearly better qualified" than the selected applicant may suffice to show the employer's proffered reason is pretextual. ***Id.*** "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." ***Reeves***, 530 U.S. at 153, 120 S. Ct. at 2111.

**The District's Proffered Explanation**

Citing ***Reeves***, Hadnot argues that the evidence shows the District's proffered explanation was false and that this evidence, combined with his prima facie case, establishes a genuine fact issue. *See **Reeves***, 530 U.S. at 147, 120 S. Ct. at 2108. He contends his case is strengthened by evidence of the District's misconduct favoring Tinajero during the interview process, the disparity between his and Tinajero's qualifications, and Rodriguez's preference for nonblack subordinates from his social circle.

"Proof that the defendant's explanation is unworthy of credence is one form of circumstantial evidence that is probative of intentional discrimination[.]" Id. In appropriate circumstances, the factfinder can reasonably infer from the explanation's falsity that the employer is concealing a discriminatory purpose. ***Id.*** The plaintiff's prima facie case, combined with sufficient evidence that the explanation is false, may permit the factfinder to conclude the employer unlawfully discriminated. ***Id.***, 530 U.S. at 148, 120 S. Ct. at 2109.

However, such a showing will not sustain a factfinder's finding of liability in a case in which no rational factfinder could conclude the action was discriminatory. ***Id.*** For instance, an employer is entitled to judgment as a matter of law when the record conclusively reveals some other, nondiscriminatory reason for its decision, or when the plaintiff creates only a weak fact issue regarding the truthfulness of the employer's explanation and abundant, uncontroverted independent evidence shows that no discrimination occurred. ***Id.*** Whether summary judgment is appropriate depends on numerous factors, including (1) the strength of the plaintiff's prima facie case, (2) the probative value of the proof that the employer's explanation is false, and (3) any other evidence that supports the employer's case and may be considered on a summary judgment motion. ***Reeves***, 530 U.S. at 148-49, 120 S. Ct. at 2109.

Hadnot fails to present any evidence that the District's proffered explanation was false. He erroneously asserts that the District's proffered explanation for hiring Tinajero was his bilingualism and claims the evidence shows (1) bilingualism was not listed on the job posting as a requirement or preference, (2) any informal preference for bilingualism was not communicated to the panel or applicants, and (3) the District's proportion of bilingual employees shows that it has no bilingual preference. Even if the evidence substantiated these claims,[3] it does not prove the District's proffered explanation false.

The District's proffered explanation was that it hired Tinajero based not on his bilingualism but his personality and perceived ability to interact well with students. Hadnot does not dispute that Tinajero's personality is better suited to the position, and we find no record evidence to the contrary. Although the District made arguments related to the bilingual preference issue, it did not assert bilingualism as an explanation. In Hadnot's petition, he alleged that Forrest insisted the District hire a bilingual applicant.[4] In the District's summary judgment motion, it argued in response to that allegation that even if the trial court assumed Tinajero's bilingualism influenced the hiring decision, it should grant summary judgment because nonbilingual individuals are not a protected class. Such an argument does not constitute an assertion that the District hired Tinajero because he is bilingual. Accordingly, we cannot agree that the evidence shows the District's explanation is false or unworthy of credence. We conclude that Hadnot's argument is without merit.

**Clearly Better Qualified**

In a parenthetical statement in his brief, Hadnot asserts "it is undisputed that Hadnot is more qualified than Tinajero"[5] and "pretext is already established on that basis alone."

---

[3] Although the posting does not explicitly assert a bilingual preference, it lists "Strong public relations, . . . communication, and interpersonal skills" under "Special Knowledge/Skills." Other undisputed evidence shows that over forty percent of the District's students are Hispanic, and most of these students have Spanish-speaking parents and learned English in school; each applicant was asked about his Spanish-speaking ability on the application and at the interviews; and among the panel members, at least Bean knew before the interviews that Spanish proficiency was a hiring preference. Furthermore, evidence that eleven percent of the District's teachers and twenty-three percent of its officers are bilingual, without more, such as the number of qualified bilingual applicants, does not show absence of a bilingual preference.

[4] Hadnot presented no evidence to support this allegation.

[5] Contrary to Hadnot's assertion, the District disputes that his qualification level exceeds Tinajero's. It acknowledges Hadnot's greater experience level but cites the job posting's requirement of "strong . . . communication, and interpersonal skills" and notes that Hadnot's DPS experience does not render him better

Elsewhere in his brief, Hadnot asserts that he was "well-qualified" and "experienced" with "29 years of exemplary [DPS] service," while Tinajero had no full-time police experience and was "clearly unqualified." To the extent Hadnot's brief might be construed to argue pretext is shown by evidence that he is "clearly better qualified" than Tinajero, we cannot agree.

Proof that a plaintiff was clearly better qualified, as opposed to merely better or as qualified, than the selected employee may be sufficient to prove the employer's explanation is pretextual. *See Moss*, 610 F.3d at 922; ***Tex. Health & Hum. Servs. v. Sepulveda***, 668 S.W.3d 856, 867 (Tex. App.—El Paso 2023, no pet.). "[T]he bar is set high for this kind of evidence." ***Moss***, 610 F.3d at 923. To show that he was clearly better qualified, the plaintiff "must present evidence from which a jury could conclude 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" ***Id.*** (quoting ***Deines v. Texas Dep't of Protective & Regulatory Servs.***, 164 F.3d 277, 280-81 (5th Cir. 1999)). Unless the qualifications are so disparate that no reasonable employer would have made the same decision, the disparity generally is not probative of discrimination. ***Id.*** at 923. "An attempt to equate years served with superior qualifications is unpersuasive." ***Id.*** (citation omitted). "Obviously, work experience is one component of defining who is more qualified, but greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." ***Id.*** (citation omitted).

It is undisputed that Hadnot possessed more law enforcement experience than Tinajero, but experience was only one component of qualification for the position. According to the job posting, the position required a valid peace officer license and basic related knowledge and training, but full-time law enforcement experience was "preferred," not required. Although Hadnot had more law enforcement experience than Tinajero, both applicants served multiple years with law enforcement agencies. In addition to the license and training requirements, the position required "strong . . . communication, and interpersonal skills." Chief Jost stated in his affidavit that several panel members found Tinajero "very likeable" and believed he would work well with the District's students. Jost also found Tinajero "very personable" and believed he would better relate to students than Hadnot. Hadnot presents no evidence to the contrary. We conclude that Hadnot failed to present evidence from which a jury could conclude no reasonable

---

qualified to work with students in a school environment or effectively communicate with the District's Spanish speaking population.

person, in the exercise of impartial judgment, could have chosen Tinajero over him. *See id.* Accordingly, he failed to show he was clearly better qualified for the position. *See id.*

## District's Misconduct

Even though Hadnot does not argue that his evidence of the District's misconduct alone raises a genuine issue of material fact regarding race discrimination, we review this evidence to determine its potential relevance to that ultimate question. *See **Reeves**,* 530 U.S. at 153, 120 S. Ct. at 2111. Hadnot contends that the evidence shows Lieutenant Rodriguez prefers to hire nonblack officers who belong to his mud buggy club. He claims that Rodriguez and Chief Jost rigged the interview process to ensure Tinajero, a nonblack club member, was hired. According to Hadnot, Rodriguez stacked the interview panel with members friendly to Tinajero. He further claims Rodriguez and Jost knew about Tinajero's general discharge and violated District policy by allowing him to interview. Finally, Hadnot asserts that Rodriguez departed from District practice by asking the panel members to complete ranking lists in addition to the interview forms.

An employer's failure to follow its own internal policies and practices when taking an adverse employment action can create an inference of pretext. ***Sepulveda***, 668 S.W.3d at 872; ***Dell, Inc. v. Wise***, 424 S.W.3d 100, 111 (Tex. App.—Eastland 2013, no pet.). The question is whether the failure to follow policies and practices supports an inference that discrimination was a motivating factor in the adverse employment action. *See* TEX. LAB. CODE ANN. § 21.125(a); ***Rachid***, 376 F.3d at 312; ***Quantum***, 47 S.W.3d at 480; ***Dell***, 424 S.W.3d at 111.

Even if the evidence supports all Hadnot's misconduct allegations, it raises no genuine issue of material fact because he fails to present any evidence that race discrimination was a motivating factor in the hiring decision. *See id.* In support of his claim that Lieutenant Rodriguez prefers to hire nonblack officers who belong to his mud buggy club, Hadnot asserts the evidence shows Tinajero was a club member and "very good friend[]" of Rodriguez, Rodriguez coaches mud buggy club members for their interviews, the District hires "mostly members of Rodriguez's mud buggy club," and "there are no known black members" of the club. If the evidence showed the club intentionally excluded black people from its membership, it might support an inference of race discrimination, but the evidence makes no such showing.

To support his assertion that "there are no known black members" of the club, Hadnot cites Officer McDaniel's testimony that McDaniel, Tinajero, Lieutenant Rodriguez, Officer

Jacob Bailey, and Officer Paco Alvarez were club members.[6] Regarding these officers' races, we find record evidence only that Rodriguez and Tinajero are Hispanic and Bailey is white. We find no other evidence of the club's racial composition, the number of club members, or any racial animus associated with the club. Evidence showing that three members of the club were not black, without more, cannot support an inference that Rodriguez's alleged preference for club members was race based. We conclude that the evidence of the District's failure to follow its policies and practices does not support an inference that its hiring decision was motivated by race discrimination. *See* TEX. LAB. CODE ANN. § 21.125(a); *Rachid*, 376 F.3d at 312; *Quantum*, 47 S.W.3d at 480; *Dell*, 424 S.W.3d at 111.

## Conclusion

We examined the entire record in the light most favorable to Hadnot, indulging every reasonable inference and resolving any doubts against the District's motion. *See Wilson*, 168 S.W.3d at 824. While Hadnot might have presented sufficient evidence to suggest that the District was motivated by cronyism, he failed to present sufficient evidence of racial discrimination. *See Harville*, 945 F.3d at 877 (nepotism evidence insufficient to suggest race discrimination); *Odom v. Frank*, 3 F.3d 839, 849-40 (5th Cir. 1993) ("good old boy network" evidence insufficient), *abrogated on other grounds by Moss*, 610 F.3d 917. The TCHRA "does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Harville*, 945 F.3d at 878.[7] Because Hadnot failed to present evidence such that a reasonable jury could find that he was the victim of intentional race discrimination, we conclude the trial court properly granted summary judgment. *See Reeves*, 530 U.S. at 153, 120 S. Ct. at 2111; *Harville*, 945 F.3d at 874. Accordingly, we overrule his sole issue.

## DISPOSITION

Having overruled Hadnot's sole issue, we ***affirm*** the trial court's order granting the District's motion for summary judgment. Hadnot filed a motion to take judicial notice pursuant

---

[6] Hadnot additionally claims Officer Forrest was a member, but McDaniel testified she was not, and we find no contrary evidence.

[7] The District's changing of its Interview scoring system in the middle of the process and Chief Jost's actions, including his failing to disclose Tinajero's general discharge to the other panel members certainly make this a closer call. But, Hadnot failed to create a fact issue that these actions were connected to his race.

to Texas Rule of Evidence 201.  We carried the motion for consideration with the merits of the appeal.  After giving the matter due consideration, we **_overrule_** Hadnot's motion to take judicial notice.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 22, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 22, 2024**

**NO. 12-23-00144-CV**

**MICKEY M. HADNOT,**
Appellant
V.
**LUFKIN INDEPENDENT SCHOOL DISTRICT,**
Appellee

Appeal from the 159th District Court
of Angelina County, Texas (Tr.Ct.No. CV-00549-19-09)

THIS CAUSE came to be heard on the appellate record, oral argument, and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **Mickey M. Hadnot** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*